

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| X.D.M., | ) |
| Appellant, | ) |
| | ) |
| v. | ) WD84520 |
| | ) |
| JUVENILE OFFICER, | ) FILED: July 5, 2022 |
| Respondent. | ) |

**Appeal from the Circuit Court of Jackson County
The Honorable Jalilah Otto, Judge**

**Before Division One: Lisa White Hardwick, P.J., and
Alok Ahuja and Mark D. Pfeiffer, JJ.**

The Circuit Court of Jackson County entered a judgment finding that X.D.M., a juvenile, committed acts which would constitute the class D felony of stealing if committed by an adult. The court placed X.D.M. on probation in the custody of his mother. X.D.M. appeals. He contends that the circuit court violated his Sixth Amendment right to confront adverse witnesses when it permitted the Juvenile Officer's witnesses to testify by two-way videoconferencing, based on generalized health concerns involving the COVID-19 pandemic. The Missouri Supreme Court recently addressed the identical Confrontation Clause issue in *C.A.R.A. v. Jackson County Juvenile Office*, 637 S.W.3d 50 (Mo. 2022). In light of *C.A.R.A.*, the judgment of the circuit court is reversed, and the case is remanded for further proceedings.

## Factual Background

On December 8, 2020, the Jackson County Juvenile Officer filed a petition alleging that X.D.M. committed an act that would constitute class D felony stealing if committed by an adult, by stealing a handgun.

The circuit court scheduled an adjudication hearing for February 10, 2021, and specified that all parties and witnesses would appear for the hearing using the WebEx two-way videoconferencing platform. On January 21, 2021, X.D.M. filed a written Objection to Adjudication by Video, in which he argued, among other things, that he had the right to confront adverse witnesses in person, face-to-face, under both the United States and Missouri Constitutions.

The Juvenile Officer filed a response contending that two-way videoconferencing would preserve many of the attributes of face-to-face confrontation, including the ability to observe the witnesses while they were testifying in real time. The Juvenile Officer also argued that the unprecedented risks associated with the COVID-19 pandemic necessitated that the hearing be conducted by two-way videoconferencing rather than in-person, and that the health and safety risks "outweigh[ed] the juvenile's right to pure face-to-face confrontation." The Juvenile Officer also contended that operational directives issued by both the Missouri Supreme Court and by the Presiding Judge of the Sixteenth Circuit authorized the conduct of the adjudication hearing by videoconference.

The circuit court denied X.D.M's Objection to Adjudication by Video. In its order, the court stated that "Covid 19 is an airborne virus. The juvenile will be provided a full and fair hearing without subjecting the participants in the hearing to a risk of serious harm or death." The court's order made no witness- or case-specific findings establishing a need to conduct the proceedings virtually.

The adjudication hearing was held on February 10, 2021. X.D.M., his counsel, and the witnesses all participated in the hearing virtually, through the WebEx platform. At the outset of the hearing, X.D.M. renewed his objection to permitting the witnesses to testify by videoconference. The circuit court overruled the objection. During the adjudication hearing, both of the Juvenile Officer's witnesses testified by WebEx. The victim of the theft identified the stolen handgun, and testified that she had not given anyone permission to remove the handgun from her home. The police officer who arrested X.D.M. testified to a traffic stop he conducted of a vehicle X.D.M. was driving (the vehicle had also apparently been stolen from the victim). During the traffic stop, X.D.M. advised the arresting officer that he had the victim's handgun concealed in the leg of his pants, and the officer recovered it.

The trial court found beyond a reasonable doubt that X.D.M. committed what would be the class D felony of stealing if committed by an adult. Following a disposition hearing, the court ordered that X.D.M. be committed to the custody of Family Court Services for residential placement, but suspended the execution of this commitment and placed X.D.M. on probation in the custody of his mother.

X.D.M. appealed. On X.D.M.'s unopposed motion, this Court stayed proceedings on appeal pending the Missouri Supreme Court's decisions in *C.A.R.A.* and *J.A.T. v. Jackson County Juvenile Office*, 637 S.W.3d 1 (Mo. 2022), each of which raised similar Confrontation Clause arguments.

Following the issuance of the Supreme Court's decision in *C.A.R.A.* and *J.A.T.*, X.D.M. filed a Motion for Remand, which the Juvenile Officer did not oppose. The Motion for Remand asked this Court to summarily vacate the circuit court's judgment in light of the *C.A.R.A.* and *J.A.T.* decisions, and remand the case to the circuit court for a new adjudication hearing. We denied the motion for summary disposition. We advised the parties, however, that they were free to expedite the

3

briefing of the case, and that the Juvenile Officer "may choose to join Appellant's brief or may choose to notify this court that Respondent does not intend to file a brief after the Appellant's brief is filed."

Following the filing of X.D.M.'s merits brief, the Juvenile Officer notified the Court that it "will <u>not</u> be filing a brief in response to Appellant's brief."

**Discussion**

As the parties have recognized, reversal is mandated in this case by the Supreme Court's decision in *C.A.R.A. v. Jackson County Juvenile Office*, 637 S.W.3d 50 (Mo. 2022). Like this case, *C.A.R.A.* was a juvenile delinquency proceeding in which the circuit court heard the testimony of the Juvenile Officer's witnesses by two-way videoconferencing, despite the juvenile's timely objections.

*C.A.R.A.* recognized that "'[t]he constitutional protections applicable in criminal proceedings are also applicable in juvenile delinquency proceedings due to the possibility of a deprivation of liberty equivalent to criminal incarceration.' 'Included among these rights are the rights to confrontation and cross-examination of witnesses.'" *Id.* at 54 (quoting *In re N.D.C.*, 229 S.W.3d 602, 605 (Mo. 2007)).

*C.A.R.A.* analyzed the Confrontation Clause issue under the varying approaches adopted in two decisions of the Supreme Court of the United States: *Crawford v. Washington*, 541 U.S. 36 (2004); and *Maryland v. Craig*, 497 U.S. 836 (1990). *C.A.R.A.* explained that, "[u]nder *Crawford*, witnesses may testify via two-way video only when the circuit court determines the witness is unavailable and the defendant had a prior chance to cross-examine the witness." 637 S.W.3d at 65 (citing *Crawford*, 541 U.S. at 68). Under *Craig*, "a defendant's rights under the Confrontation Clause are violated by the use of two-way video procedure unless such procedure is necessary to further an important public policy and the reliability of the testimony is otherwise assured." 637 S.W.3d at 58 (citations omitted). *C.A.R.A.* explained that "*Craig*'s test requires courts to engage in a case-specific

4

finding to analyze the necessity prong." *Id.* *C.A.R.A.* reasoned that, in applying the *Craig* standard, "even if we assume the existence of COVID-19 could satisfy the 'important public policy' standard, the circuit court would still be required to make witness-specific findings to determine it was necessary for a particular witness to testify via two-way video due to an enhanced risk associated with COVID-19." 637 S.W.3d at 65-66.

*C.A.R.A.* determined that the circuit court had failed to make sufficient findings to justify witness testimony by videoconference, under either the *Crawford* or *Craig* standards. Under the *Crawford* standard, the Missouri Supreme Court noted that "the circuit court made no finding as to the unavailability of any witness." 637 S.W.3d at 65. Under the *Craig* standard, the Court noted that, despite "the circuit court's general statements concerning COVID-19," "no evidence whatsoever was presented to the circuit court concerning the particular risks facing [the Juvenile Officer's witnesses]. And the circuit court made no finding that anything about the health or circumstances of these witnesses required they be permitted to testify remotely." *Id.* at 66.

*C.A.R.A.* also emphasized that the COVID-19-related administrative orders issued by the Missouri Supreme Court, and by the Presiding Judge of the Sixteenth Circuit, had _not_ authorized contested juvenile-delinquency hearings to be conducted by videoconference. To the contrary, none of those administrative orders authorized the circuit courts to hold virtual hearings where the conduct of such hearings was inconsistent with the constitutional or statutory rights of any litigant. *Id.* at 64-65.

*C.A.R.A.* concluded its discussion by emphasizing that, despite "the devastating toll the COVID-19 pandemic has taken in this country," "generalized concerns about the virus may not override an individual's constitutional right to confront adverse witnesses in a juvenile adjudication proceeding." *Id.* at 66.

As the parties have recognized, the decision in *C.A.R.A.* requires that we reverse the circuit court's judgment in this case. As in *C.A.R.A.*, the circuit court made no findings that the Juvenile Officer's witnesses were unavailable to testify, and no evidence was presented to the circuit court concerning any particular risks which those witnesses faced if they were required to testify in person. The circuit court could not rely on the COVID-19-related administrative orders issued by the Supreme Court or the Sixteenth Circuit to justify the virtual hearing, since those orders did not – and could not – override X.D.M.'s rights under the Confrontation Clause.

**Conclusion**

The circuit court erred when it admitted testimony taken by two-way videoconferencing, over X.D.M.'s objections, to substantiate the court's delinquency finding, without making any case- or witness-specific findings of the necessity to dispense with face-to-face confrontation. The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.